

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**03/08/2013**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 11-40829-H4-7** |
| **GREAT GULFCAN ENERGY** | § | **Case No. 11-40830-H4-7** |
| **TEXAS, INC., et al.,** | § | **Case No. 11-40831-H1-7** |
| | § | **Case No. 11-40832-H1-7** |
| **Debtors.** | § | |
| | § | **Chapter 7** |
| | § | |

| | | |
|---|---|---|
| | § | |
| **LOWELL T. CAGE, TRUSTEE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Adversary No. 12-3113** |
| | § | |
| **GDH INTERNATIONAL, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION REGARDING: (1) GDHI'S MOTION FOR SUMMARY JUDGMENT; AND (2) THE TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[Adv. Doc. Nos. 80 & 91]

### I.   INTRODUCTION

This dispute underscores the importance of careful legal drafting and attention to jurisdictional issues, and that is the reason the Court chooses to write this Memorandum Opinion.

In the suit at bar, the debtors, Great Gulfcan Energy Texas, Inc., Seiran Exploration and Production Company, LLC, and Great Gulfcan H198L, LLC (collectively, the Debtors) and the defendant, GDH International Inc. (GDHI), have shared similar experiences. Both parties were direct and indirect victims of Richard A. Sharp (Sharp), who acted as a principal and officer at both GDHI and one of the debtor companies, Seiran Exploration and Production (Seiran). Both GDHI and Seiran were harmed by Sharp's use of his position of power and trust to

misappropriate corporate assets, and both companies filed lawsuits against Sharp seeking redress for Sharp's wrongdoing—GDHI in a Louisiana state court and Seiran in a Texas state court.

Prior to bankruptcy, Seiran conveyed title to real property and a boat to Sharp for less than equivalent value.  Thereafter, Sharp conveyed this same real property and boat to GDHI.  Finally, GDHI, in turn, sold the real property to Ernest and Nancy Williams (the Williamses) and the boat to Vincent F. Wynne Jr. (Wynne).

As Seiran has now filed a Chapter 7 petition, Lowell Cage (the Trustee), standing in the shoes of Seiran, asserts five claims in his complaint against GDHI, including: (1) a declaratory judgment that the real property belongs to the Debtors' estate and must be turned over to the Trustee;[1] (2) avoidance of Seiran's pre-petition transfer of the real property and the boat to Sharp pursuant to 11 U.S.C. §§ 548[2] and 550;[3] (3) avoidance of the post-petition transfer of the real property from Sharp to GDHI, pursuant to 11 U.S.C. § 549;[4] (4) imposition of a constructive trust on the real property and the boat; and finally, (5) a declaratory judgment that GDHI willfully violated the automatic stay by transferring the real property to the Williamses, and a related assessment of damages.

---

[1] In the instant adversary proceeding, one key issue is whether the real property and the boat are property of the estate.  The Fifth Circuit has held that the question of whether an asset is property of the estate is a "legal determination which frequently entails complex analyses involving a number of legal elements and a variety of facts." *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005).  Although the determination of this issue is dependent on the facts of the suit, there are no material facts in dispute; the disputed issue presents solely a question of law and is ripe for summary judgment. FED. R. CIV. P. 56 (made applicable by Fed. R. Bankr. P. 7056).

[2] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted.  Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy.

[3] While Trustee seeks to avoid the transfer of the Boat to GDHI under § 548, the Trustee then never requests *recovery* of the Boat, or its value, under § 550 in the following: (1) the Initial Complaint, (2) the First Amended Complaint, (3) or his response to GDHI's Motion for Summary Judgment.

[4] While Trustee seeks to avoid the transfer of the Real Property to GDHI under § 549, the Trustee never pursues avoidance or requests recovery of the *Boat*, or its value, under § 549 in the following: (1) the Initial Complaint, (2) the First Amended Complaint, (3) or his response to GDHI's Motion for Summary Judgment.

Both the Trustee, on behalf of the Debtors' estate, and GDHI have brought competing motions for summary judgment. For the reasons set forth herein, this Court concludes that the Trustee's Motion for Partial Summary Judgment should be denied in its entirety, and that GDHI's Motion for Summary Judgment should be granted in its entirety.

The Court now makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.    FINDINGS OF FACT

1.   On September 30, 2010, Seiran purchased real property in Plaquemines Parish, Louisiana at 307 Martin Lane, Port Sulphur, Louisiana 70083 (the Real Property). This sale was effectuated by Seiran's authorized agent and principal, Sharp. In addition to the Real Property, Seiran (through Sharp) also purchased a boat (the Boat), which was then stored at the Real Property. [Adv. Doc. No. 91-1, p. 2].

2.   On May 20, 2011, Seiran executed an irrevocable donation (i.e., a gift by deed) of the Real Property to Sharp, which was filed for registry in the Plaquemines Parish Conveyance Records on May 24, 2011. Seiran also transferred the Boat to Sharp. Seiran received no consideration for either of these transfers. [*Id.*].

3.   Soon thereafter, Sharp was removed from his management position at Seiran for committing "unauthorized actions," which involved numerous instances of self-dealing and misappropriation of company property. [*Id.* at p. 3].

4.  On August 2, 2011, GDHI was incorporated in Louisiana with Sharp, among others, as an owner and officer.  Soon after GDHI's creation, Sharp allegedly began an extended series of improper acts and questionable conduct at GDHI, including the writing of bad checks, to misappropriate company assets.  Sharp also began to divert corporate business opportunities for his personal use, causing GDHI to lose valuable contracts and other investments.  [*Id.* at p. 4].

5.  On August 26, 2011, Seiran—having rid itself of Sharp—filed an application for a temporary restraining order (the TRO) against Sharp in the District Court of Brazoria County, Texas (the Texas Court) in *Great Gulfcan Energy Texas, Inc. and Seiran Exploration and Production Company, LLC v. Richard A. Sharp, III and Lysette R. Sharp (f/k/a Lysette R. Lerma)*, Doc. No. 64697 (the Texas Suit).  The Texas Court granted the TRO that same day.  The TRO "restrained [Sharp] from transferring, selling, or otherwise alienating the funds, property and proceeds described" within the TRO.  The Texas Court went on to describe the Real Property and several other handwritten withdrawal slips prepared by Sharp.  The TRO made no reference to the Boat.  [Adv. Doc. No. 1, p. 3]; [Adv. Doc. No. 59, p. 3]; [Adv. Doc. No. 1-5].

6.  On September 12, 2011, Seiran filed for, and obtained, a temporary injunction against Sharp from the Texas Court (the Temporary Injunction).  The Temporary Injunction "restrained [Sharp] from transferring, selling, or otherwise alienating the funds, property and proceeds described" within the order.  In the Temporary Injunction, the Texas Court expressly described the Real Property and several other handwritten withdrawal slips prepared by Sharp.  The Temporary Injunction made no mention of the Boat.  [Adv. Doc. No. 6].

7.  On October 25, 2011, GDHI forced Sharp to resign.  [Adv. Doc. No. 91-1, p. 4].

8.  On November 29, 2011, GDHI—having rid itself of Sharp—brought suit against him in the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana (the Louisiana

4

Court) in *GDH International, Inc. v. Richard A. Sharp, III and Sharp Global Energy Services, LLC*, Doc. No. 2011-16710 (the Louisiana Suit).  GDHI's petition in the Louisiana Suit stated claims for breach of contract, breach of fiduciary duty, theft, conversion, unfair trade practices, racketeering violations, tortuous interference with contract, and fraud. *[Id.]*.

9.   On the same day that GDHI initiated the Louisiana Suit, GDHI caused the Real Property to be seized by a sheriff of Plaquemines Parish and attached pending resolution of the Louisiana Suit.   GDHI, through its counsel at that time, conducted a title search of the Plaquemines Parish Mortgage and Conveyance Records, which revealed no questionable encumbrances, liens, or notices of *lis pendens* on the Real Property.   Rather, the title search indicated that Sharp was record owner of the Real Property.   *[Id.* at p. 4–5]; [Adv. Doc. No. 48-3, Ex. G ¶ 13].

10. On December 12, 2011, the Texas Court entered a Final Order (the Final Order) voiding the transfer of the Real Property from Seiran to Sharp that had occurred on May 20, 2011.   Three separate times the Final Order decreed that the donation "is hereby declared VOID."  Having declared the donation void, the Final Order then "fully vested" ownership of the Real Property in Seiran. The Final Order also decreed that Sharp is prohibited from "signing any deed or legal instrument of any kind involving the Real Property, save and except an instrument affirming that that [sic] the deed [to the Real Property] is void" and then conveys his remaining interest in the Real Property to the Debtor.[5]   The Final Order did not reference the Boat. [Adv. Doc. No. 1-7].   GDHI had no knowledge of the Final Order at the time it was signed by the Texas Court.

---

[5] Sharp has never executed an instrument affirming that Seiran's deed to him is void or re-conveying the Real Property to Seiran.

11. On December 27, 2011, the Debtors filed a Chapter 7 petition in this Court (the Petition Date). [Adv. Doc. No. 91-1, p. 8]. On the Petition Date, GDHI was not a creditor of the Debtors, and therefore was neither listed on the creditors' matrix nor received notice of this bankruptcy filing. *See* [Main Case Doc. No. 2].

12. On January 5, 2012, Sharp entered into an agreement with GDHI, admitting to all of the claims and allegations made by GDHI in the Louisiana Suit. Sharp agreed to a monetary judgment of $450,000.00. To partially satisfy this judgment, Sharp executed, and GDHI signed, a *dation en paiement*, or "giving in payment" (the Dation), which conveyed both the Real Property and the Boat to GDHI. At the time Sharp signed the Dation, GDHI believed that Sharp owned the Real Property [Adv. Doc. No. 59-3], and as of the date the parties signed the Dation (i.e., January 5, 2012), GDHI had no knowledge of either the Texas Suit or Seiran's bankruptcy. [Adv. Doc. No. 91-1, p. 5]; [Adv. Doc. No. 92, p. 6].

13. On January 6, 2012, the Trustee notified GDHI of the Debtors' bankruptcy. *See* [Doc No. 52-1, p. 3, 4]. On January 10, 2012, the Louisiana Court signed the judgment approving the consent agreement conveying the Real Property and the Boat to GDHI.[6] [Adv. Doc. No. 48-3, Ex. G, p. 6].

14. On January 11, 2012, the judgment in the Louisiana Suit and the Dation were filed in the registry of the Plaquemines Parish conveyance records, thereby giving notice of the Real Property's conveyance from Sharp to GDHI.

---

[6] The Trustee contends that he notified GDHI on January 6, 2012 of the Debtors' bankruptcy and that GDHI therefore had notice of Seiran's interest in the Real Property and the Boat at the time that the Louisiana Court signed the consent judgment. [Adv. Doc. No. 92, p. 6]. This assertion appears to be based on an email string between the Trustee's counsel and GDHI's counsel. [Adv. Doc. No. 52-1, p. 3–4]. That string, which began on January 9, 2012, references a phone call on Friday (presumably January 6, 2012) between counsel for the Trustee and counsel for GDHI. The presumption is that during that phone call, the Trustee's counsel notified GDHI's counsel of the bankruptcy.

15. On February 10, 2012, the Trustee filed an initial complaint (the Initial Complaint) in this Court against Sharp and GDHI. In his prayer, the Trustee sought, among other things: (1) a declaratory judgment that the Real Property belongs to the Debtors' estate; (2) an avoidance of the transfer of the Real Property and the Boat from Seiran to Sharp (under 11 U.S.C. § 548), and recovery of the Real Property or its value from GDHI (under § 550); (3) an avoidance of the transfer of the Real Property from Sharp to GDHI (under § 549);[7] and (4) an imposition of a constructive trust on the Real Property and the Boat in the Trustee's favor, which would authorize the Trustee to "liquidate the Real Property for the benefit of the creditors. . . ." [Adv. Doc. No. 1, p. 7].

16. On February 22, 2012, GDHI sold the Real Property to the Williamses. [Adv. Doc. No. 91-1, p. 5]. At the time of this sale, GDHI had been served with process, giving it notice of the Initial Complaint. [Adv. Doc. No. 10]. Additionally, on February 20, 2012, GDHI sold the Boat to Wynne. [Adv. Doc. No. 91-4, p. 18–22].

17. On March 26, 2012, the Trustee moved for default judgment against Sharp and GDHI as a result of their failure to respond to the Initial Complaint. [Adv. Doc. No. 13]. On April 2, 2012, this Court granted the motion. [Adv. Doc. No. 16].

18. On April 4, 2012, GDHI filed a motion with this Court to set aside the default judgment and to allow GDHI to file an answer to the Initial Complaint, which GDHI attached to the motion. [Adv. Doc. No. 17]. On April 19, 2012, this Court granted the motion. [Adv. Doc. No. 25].

---

[7] In the body of the Initial Complaint, the Trustee sought to avoid "Sharp's post-petition transfer [i.e., the Dation] to GDHI" and "that the [Real] Property be declared property of [the Debtors'] bankruptcy estate." [Adv. Doc. No. 1, p. 6]. His prayer echoes that request; in it, the Trustee sought to "avoid the transfer of the [Real] Property from Seiran to GDHI pursuant to Section 549." [Adv. Doc. No. 1, p. 7]. The Initial Complaint never asked this Court to avoid the transfer of the Boat pursuant to § 549.

19. On May 3, 2012, the Trustee moved for default judgment against Sharp, individually. [Adv. Doc. No. 91-1, p. 6].

20. On May 22, 2012, GDHI objected to the Trustee's default judgment motion against Sharp, asserting that a default judgment against Sharp could prejudice the rights of GDHI and impair its defenses to the Initial Complaint. [Adv. Doc. No. 32].

21. On May 30, 2012, the Trustee filed a notice of *lis pendens* in the Plaquemines Parish Mortgage and Conveyance Records. [Adv. Doc. No. 91-1, p. 6].

22. On June 20, 2012, the Trustee and GDHI filed a stipulation with this Court that although the default judgment against Sharp is effective, his default judgment does not affect the rights of GDHI to contest any factual or legal assertion in the proceeding. [Adv. Doc. No. 36].

23. That same day, GDHI filed a motion to withdraw its opposition to the Trustee's default judgment against Sharp. [Adv. Doc. No. 37.] On June 25, 2012, this Court granted the motion. [Adv. Doc. No. 38].

24. On July 2, 2012, this Court granted the Trustee's motion for default judgment against Sharp. [Adv. Doc. No. 40].

25. On September 27, 2012, GDHI filed a motion for summary judgment and a memorandum in support thereof (the First Motion for Summary Judgment). [Adv. Doc. Nos. 47 & 48]. In its supporting memorandum, among other things, GDHI refuted the Trustee's claim that he can avoid the Dation under § 549, and, therefore argued that the Trustee cannot avoid Sharp's transfer to GDHI of either the Real Property *or* the Boat. [Adv. Doc. No. 48, p. 15]. The Trustee objected to the First Motion for Summary Judgment on October 4, 2012 [Adv. Doc. No. 52]. Then, on October 30, 2012, the Trustee amended the Initial Complaint (the First Amended Complaint), adding the Williamses as defendants and asserting an additional claim

against GDHI, namely, willful violation of the automatic stay due to GDHI's conveyance of the Real Property to the Williamses.[8]   [Adv. Doc. No. 59].[9]   As a result of the First Amended Complaint, the parties submitted an agreed motion to withdraw the First Motion for Summary Judgment, which the Court granted on October 31, 2012. [Adv. Doc. Nos. 60 & 67].

26.   On December 18, 2012, the Trustee filed a Motion for Partial Summary Judgment (the Trustee's Motion for Partial Summary Judgment) to assert a single claim:   that the Real Property belonged to Seiran on the Petition Date, and therefore is property of the Debtors' estate. Accordingly, the Trustee argues that the transfer of the Real Property from GDHI to the Williamses constitutes a violation of the automatic stay.[10]   [Adv. Doc. No. 80].   The Trustee's Motion for Partial Summary Judgment seeks no relief regarding the Boat.   [Id.].

27.   On January 15, 2013, the Williamses filed an Opposition to the Trustee's Motion for Partial Summary Judgment, as well as a Cross-Motion for Summary Judgment.   On the same day, GDHI also filed its Opposition to the Trustee's Motion for Partial Summary Judgment, as well as a second motion for summary judgment (GDHI's Motion for Summary Judgment).   In their respective motions, GDHI and the Williamses argue similarly that all five claims asserted by the Trustee in the First Amended Complaint are legally deficient, and that summary judgment in their favor is therefore appropriate.   [Adv. Doc. Nos. 89 & 91-1].   Additionally, GDHI refutes the Trustee's claim that the Trustee could avoid the Dation, which conveyed both the Real

---

[8] The First Amended Complaint does not add Wynne (to whom GDHI transferred the Boat) as a defendant, nor does it assert a claim against GDHI for violation of the stay due to its transfer of the Boat to Wynne.

[9] Both the prayer of the Initial Complaint and the prayer of the First Amended Complaint request the following:  (1) that this Court avoid the transfer of the Real Property as between Sharp and Seiran; (2) that this Court avoid the transfer of the Real Property as between Sharp and GDHI; and (3) that this Court avoid the transfer of the Boat as between Sharp and Seiran.  The prayers make no mention of recovery of the Boat, or its value, as between Sharp and GDHI.

[10] The Trustee did not plead a particular section of § 362, but the Court presumes that the Trustee is arguing that the transfer of the Real Property was a violation of the automatic stay under § 362(a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

Property and the Boat to GDHI. [Adv. Doc. No. 91-1]. Finally, as it did in the First Motion for Summary Judgment, GDHI also argues against the Trustee's § 549 avoidance claim regarding the Boat.

28. On February 4, 2013, the Trustee filed a response to GDHI's Motion for Summary Judgment and the Williamses' Motion for Summary Judgment. The Trustee's response does not respond to GDHI's refutation of the Trustee's § 549 avoidance claim against the Boat. [Adv. Doc. No. 92].

29. On February 6, 2013, the Trustee filed a motion to dismiss the Williamses as a party. [Adv. Doc. No. 93].

30. On February 8, 2013, this Court granted that motion and dismissed the Williamses as a party. [Adv. Doc. No. 94]. This left the Trustee and GDHI as the only remaining parties in this adversary proceeding.[11]

III.   CONCLUSIONS OF LAW

A.    **Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O) and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy suit."). Indeed, this proceeding is core because the issues affect the

---

[11] The Trustee has never sued Wynne, the individual to whom GDHI conveyed the Boat on February 20, 2012. Thus, the final transferees (i.e., Williams and Wynne) need not worry about losing the assets that they purchased from GDHI, as neither of them are parties.

property of the estate and the amount of assets available for distribution. Venue is proper pursuant to 28 U.S.C. § 1409(a).

**B.      Constitutional Authority to Enter a Final Order**

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter final orders. 131 S. Ct. 2594 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it. The Court concludes that the facts in the pending suit are distinguishable from those in *Stern*, and that this Court has the authority to enter a final judgment. In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* The dispute at bar, on the other hand, despite requiring the application of state law, arises from express bankruptcy provisions: 11 U.S.C. §§ 550(b), 549, 548, 541, and 362(a). Moreover, unlike *Stern*, application of the state law to this provision *will* resolve the validity or invalidity of any claims that the defendant (i.e., GDHI) has against the bankruptcy estate. This suit is therefore easily distinguishable from the dispute in *Stern*, and this Court is constitutionally authorized to enter a final judgment.

**C.      GDHI Has Established That No Genuine Issues of Fact Remain**

To obtain summary judgment, there must be "no genuine dispute as to any material fact and the movant [must be] entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Doubts are to be resolved in favor of the non-moving party and all reasonable inferences are to be made in favor of the same. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Nevertheless, a court will find that there is no genuine issue of material fact if the evidence is such that no reasonable juror could find for the non-movant. *Id.* For the reasons set forth below, each claim set forth by the Trustee in the First Amended Complaint fails, making

summary judgment an appropriate means of resolving all claims set forth therein.  This Opinion addresses these claims in the same order that they are pleaded in the First Amended Complaint.

1. The Real Property Is Not Included in the  Debtors' Estate under 11 U.S.C. § 541 because the Final Order Did Not Affect Legal or Equitable Title to the Real Property, and therefore, Seiran Had No Legal Interest in the Real Property as of the Petition Date.

The Trustee contends that the Real Property belongs to the Debtors' estate under 11 U.S.C. § 541.  Generally, property of the estate includes "*all legal and equitable interests* of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1) (emphasis added).  Furthermore, § 541(d) specifically notes that even if the debtor holds "as of the commencement of the case, *only* legal title and not an equitable interest" the property still "becomes property of the estate under subsection (a) of this section . . . to the extent of the debtor's legal title to such property." 11 U.S.C. § 541(d); *see also Vineyard v. McKenzie (In re Quality Holstein Leasing),* 752 F.2d 1009, 1014 n.10 (5th Cir. 1985) (noting that property of the estate over which the debtor has legal title but another party has equitable title "enters the bankruptcy estate . . . to the extent of legal title"); *Ga. Pac. Corp. v. Sigma Serv. Corp.,* 712 F.2d 962, 967-68 (5th Cir. 1983) (requiring equitable interest holder to turn over property to which the debtor held bare legal title because such property is part of the bankruptcy estate).  The estate does not receive more rights than those that the debtor has in property as of the commencement of the case.  Thus, if a debtor's interest in property is limited at the time of filing, the estate's right in the property is also so limited. *E.g., In re Dolphin Titan Int'l, Inc.*, 93 B.R. 508, 512 (Bankr. S.D. Tex. 1988) (citing *Bank of Marin v. England*, 385 U.S. 99 (1966); *N.S. Garrott & Sons v. Union Planters National Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir. 1985); 5-541 COLLIER ON BANKRUPTCY § 541.03.

Applying this law to the suit at bar, the Debtors' interest in the Real Property—and therefore, the Trustee's request for declaratory judgment that the Real Property is property of the Debtors' estate—hinges on the enforceability of the Final Order from the Texas Court. If the Final Order re-conveyed an interest (legal or equitable) in the Real Property to Seiran as of December 12, 2011 (i.e., the date of the Final Order), then as of December 27, 2011 (i.e., the date that Seiran filed its Chapter 7 petition), the Debtors' have an interest in the Real Property under § 541. On the other hand, if the Final Order failed to re-convey to Seiran a legal or equitable interest in the Real Property, then the Real Property did not become property of the Debtors' estate on the Petition Date. This Court must therefore determine the nature and extent of Seiran's interest in the Real Property as of the Petition Date, and it must do so by reference to the applicable state law—here, the laws of the State of Texas.[12] *Butner v. United States*, 440 U.S. 48, 55 (1979).

### a. The Final Order Did Not Give Seiran Legal Title to the Real Property and Therefore Seiran Had No Legal Interest in the Real Property on the Petition Date.

The Trustee contends that the Final Order gave Seiran a legal interest in the Real Property. The Court disagrees. Under federal, as well as Texas state law "a local action involving real property can only be brought within the territorial boundaries of the state where the land is located." *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987); *In re Elamex, S.A.*, 367 S.W.3d 891, 897 (Tex. App. 2012) ("[I]t is well-settled that Texas courts have no subject matter jurisdiction to adjudicate title to interests in real property outside of Texas.");

---

[12] Although the Real Property is located in Louisiana, the Final Order was issued by the Texas Court. Therefore, because the Final Order was issued pursuant to applicable Texas law, this Court must look to Texas law to determine whether the Final Order gave Seiran any interest whatsoever in the Real Property as of the Petition Date. If it did, then when Seiran filed its bankruptcy petition, whatever interest it held in the Real Property became property of the estate. If it did not, then when Seiran filed its bankruptcy petition, the Real Property did not become property of the estate.

*Trutec Oil & Gas, Inc. v. W. Atlas Intern., Inc.*, 194 S.W.3d 580 (Tex. App. 2006) (same). This "local action" rule is so fundamental that "state courts are not obligated to give full faith and credit to judgments from either federal or state courts sitting outside the local state's territorial boundaries." *Id.* (citing *Iselin v. Meng*, 269 F.2d 345, 347 (5th Cir. 1959)).

Although the "local action" rule prohibits courts from taking direct action, where the action is "transitory," a court can overcome the local action rule's limitation and *indirectly* exercise extraterritorial jurisdiction over real property. *See Keller v. Millice*, 838 F. Supp. 1163 (S.D. Tex. 1993) (explaining the difference between transitory and local actions). Stated differently, where a court lacks in rem jurisdiction over the real property in question, a court may exercise personal jurisdiction over a party in order to transfer title to the same property. The transitory action rule therefore essentially permits a court to coerce a litigant to do something it is powerless to do itself: transfer title of real property located outside of the state in which the court sits. *See Sax v. Sax*, 294 F.2d 133, 137 (5th Cir. 1961) ("To [circumvent the territorial jurisdiction limitation] the Court would merely be required to declare as to the parties before it that the agreement between them is invalid because of fraud and then through *coercive sanctions against the guilty parties compel them to take suitable action.*") (emphasis added).

Before a court can exercise such indirect extraterritorial jurisdiction over real property, two elements must be satisfied. First, a court must have in personam jurisdiction over a party. *Keller*, 838 F. Supp. at 1173. Second, the suit giving rise to the court's jurisdiction must "require[] the court to enforce a right in real property arising from a preexisting ownership interest." *Id.* If both elements are met, it is permissible for a court to indirectly affect title to property. *See Allis v. Allis*, 378 F.2d 721, 724 (5th Cir. 1967) ("[A] significant, seemingly incongruous exception to [the local action] doctrine is that a court having in personam

jurisdiction over a litigant may *indirectly* act upon realty situated in another jurisdiction *by means of an equitable decree directing that party to convey title to the foreign realty to another*.") (emphasis added).

Applying the transitory rule to the proceeding at bar,[13] it is clear that the Final Order did not take such *indirect* action. Instead, it took impermissible *direct* action against the Real Property. For example, rather than commanding Sharp to re-convey the Real Property to the Debtor, the Texas Court—in the Final Order consciously stylized: "FINAL ORDER VOIDING DEED TO RICHARD A. SHARP"—decreed that the conveyance of the Real Property from Seiran to Sharp "is hereby declared VOID" and "title to the Real Property is fully vested in . . . Seiran." [Finding of Fact No. 10].

Despite this unequivocally *direct* language, the Trustee argues that the Texas Court took *indirect* action against the Real Property; and that rather than exercise in rem jurisdiction over the Real Property, the Final Order merely exercised in personam jurisdiction over Sharp. In support of this argument, the Trustee quotes the Final Order, which says, in part, that Sharp is prohibited from "signing any deed or legal instrument of any kind involving the Real Property, save and except an instrument affirming that [sic] the deed [to the Real Property] is void"; and, which conveys his remaining interest in the Real Property to Seiran. [Finding of Fact No. 10]. For at least two reasons, this language does not help the Trustee. First, this language only appears in the Final Order *after* the Texas Court had already taken direct action against the Real Property by repeatedly declaring the deed "void" and the Real Property "fully vested" in the Seiran. [Finding of Fact No. 10]. Second, the Texas Court's language is not coercive, thereby

---

[13] GDHI does not dispute that the Texas Court had personal jurisdiction over Sharp and that Seiran had a pre-existing ownership interest in the Real Property. Therefore, for purposes of this Court's analysis, there is no dispute that the two elements necessary for the transitory action rule to apply have been satisfied.

compelling Sharp to convey the Real Property to the Debtor. Instead, the Texas Court merely permitted Sharp to sign an instrument affirming what it had already declared—that the Real Property is "fully vested" in Seiran. [Finding of Fact No. 10].

Under these circumstances, this Court concludes that the Final Order violated the local action rule, and did not use language that would cause the transitory action rule to apply. Thus, despite the Final Order, title to the Real Property remained with Sharp, and Seiran acquired no legal interest whatsoever in the Real Property.

**b.  The Final Order Did Not Give Seiran Equitable Title and Therefore that Seiran Had No Equitable Interest in the Real Property on the Petition Date.**

The Trustee nevertheless argues that the Final Order gave Seiran equitable title to the Real Property. Under Texas law, "[a]n entity holds equitable title when it possesses the present right to compel legal title." *Harris County Appraisal Dist. v. Primrose Houston 7 Housing, L.P.*, 238 S.W.3d 782, 787 (Tex. App. 2007). Texas decisions supporting this proposition have not expressly defined the meaning of the phrase "the present right to compel legal title." Courts have, however, focused on whether the complaining party has the ability to *directly* control who will ultimately have legal title to a given property. *See Primrose Houston 7 Housing, L.P.*, 238 at 787 (illustrating that the present right to compel legal title exists where "(1) parent company A holds a full ownership interest in its subsidiary B; (2) B holds legal title to certain Real Property; (3) upon dissolution of B, legal title to its Real Property will revert to A; and (4) A has the power to dissolve B at any time."); *see also Harris County Appraisal Dist. v. Se. Texas Hous. Fin. Corp.*, 991 S.W.2d 18, 21 (Tex. App. 1998) (holding that an entity had equitable title because, through its own actions, it could compel legal title to properties to change hands).

The Trustee's argument that the holding in *Primrose* grants Seiran equitable title to the Real Property is off the mark. The *Primrose* holding limits equitable title to instances where an

16

entity can compel legal title to change hands *through its own actions*. *Primrose*, 238 at 787. Here, Seiran could not itself compel Sharp to convey legal title back to Seiran. Indeed, that is why Seiran initiated the Texas Suit. Without assistance from the Texas Court, Seiran could not compel legal title. Thus, because the Trustee bases his argument (that title to the Real Property was re-conveyed to Seiran) on the language in the Final Order, the Trustee is relying upon a court to obtain legal title—not upon Seiran's own actions. Under these circumstances, Seiran never obtained equitable title to the Real Property.

Moreover, even if Seiran had been granted a legal interest in the Real Property as a result of the Final Order—not through direct action, as discussed above, but rather through the transitory exception—title did not automatically vest in Seiran. Rather, the rule requires that the transferor party (here, Sharp) effect the court's order and execute a document conveying the property (here, to Seiran). *See, e.g.*, *Allis*, 378 F.2d at 724. In fact, the transitory rule's exception exists for this reason—to do indirectly what the court cannot. *See id.* Thus, as the Final Order itself could not vest title in Seiran, *and* because Sharp never took any action to re-convey title to Seiran, Seiran (and now the Trustee) cannot compel legal title to change hands. Accordingly, neither Seiran—nor the Trustee—has equitable title to the Real Property.

In sum, Seiran had no interest of any kind—legal or equitable—in the Real Property as of the Petition Date. Accordingly, the Real Property has never been property of the Debtors' estate under § 541; therefore, the Trustee's request that this Court declare that the Real Property is property of the Debtors' estate must be denied.

2.   The Trustee Cannot Recover the Pre-Petition Transfer of the Real Property Under 11 U.S.C. § 548 Because GDHI Can Successfully Assert a Good Faith Defense Under 11 U.S.C. § 550(b)(1)

Under 11 U.S.C. § 548, the Trustee asserts that he can avoid Seiran's pre-petition transfer of the Real Property to Sharp; and that under 11 U.S.C. § 550(a), he can recover the Real Property, or its value, from the subsequent transferee—i.e., GDHI. The Trustee argues further that GDHI did not take the Real Property (1) for value; (2) in good faith; and (3) without knowledge of the voidability of the transfer, and is therefore unable to assert a defense to recovery of the Real Property under 11 U.S.C. § 550(b)(1). GDHI disagrees. It argues that even if the Trustee can prove that Seiran's conveyance of the Real Property to Sharp is avoidable,[14] the Trustee may not recover its value from GDHI because, as a subsequent transferee, GDHI can successfully assert a good faith defense.[15] The Court agrees with GDHI.

### a.   GDHI Took The Real Property For Value

To successfully raise the § 550(b)(1) defense, the statute requires that a subsequent transferee take the property at issue "for value," which expressly includes the "satisfaction or securing of a present or antecedent debt." 11 U.S.C. § 550(b)(1). Value, under the statute, "is different from and does not mean value to the debtor; a natural reading of this section looks to what the transferee gave up rather than what the debtor received." *Genova v. Gottlieb (In re Orange Cnty. Sanitation, Inc.)*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997) (citing 5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 550.03[1] (15th ed. Rev. 1997)).

---

[14] Seiran's conveyance of the Real Property to Sharp certainly appears to be voidable, as Seiran received no consideration for conveying the Real Property [Finding of Fact No. 2], and this conveyance occurred within two years prior to the Petition Date [*Id.*].

[15] The Trustee no longer seeks to recover the Real Property itself, as he voluntarily dismissed Williams from the suit. Rather, at this point, the Trustee seeks to recover the value of the Real Property from GDHI.

Here, GDHI took the Real Property "for value," accepting it (as a creditor) from Sharp (as a debtor) in partial satisfaction of an antecedent debt; namely, the amount which Sharp owed to GDHI when it initiated the Louisiana Suit. [Finding of Fact Nos. 8 & 12]. Given that satisfaction of an "antecedent debt" specifically fulfills the requirement of § 550(b)(1), GDHI has satisfied the "for value" element of the defense.

### b. GDHI Took The Real Property In Good Faith

The Code does not define "good faith," and as a result, many courts conflate the good faith requirement and the without knowledge requirement into a single element of the defense. *See, e.g.*, *Bonded Fin. Servs., Inc. v. Eu. Am. Bank*, 838 F.2d 890, 897–98 (7th Cir. 1988) ("Venerable authority has it that the recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate."); *Gottlieb*, 221 B.R. at 328 ("There is no meaningful distinction between the two remaining requirements of § 550(b), 'good faith' and 'without knowledge of the voidability of the transfer.'"); *FDIC v. Wright (In re Still)*, 124 B.R. 24, 28 (Bankr. N.D. Tex. 1991) (construing good faith to mean "whether the transferee knew or should have known that the purpose of the trade was to defraud the debtor's creditors."). Nevertheless, at least one court has described good faith as "an ordinary business transaction concept," where the transferee will be judged to have good faith unless the circumstances of the transfer gave the transferee "reason to look behind the payments to analyze the original source of the funds." *CCEC Asset Mgmt. Corp. v. Chem. Bank (In re Consol. Capital Equities Corp.)*, 175 B.R. 629, 638 (Bankr. N.D. Tex. 1994).

Applying the *Consol. Capital Equities Corp.* definition of good faith to the case at bar, GDHI has fulfilled this element under 11 U.S.C. § 550(b)(1). First, GDHI conducted a title search when it initiated the Louisiana Suit (on November 29, 2011), which was well before the

execution of the Dation. [Finding of Fact Nos. 8, 9 & 12]. This search confirmed that Sharp had the unimpeded legal authority to convey the Real Property. [Finding of Fact No. 9]. Moreover, on January 5, 2012, when Sharp executed the Dation conveying the Real Property to GDHI, GDHI was unaware of both the Texas Suit against Sharp and of Seiran's bankruptcy. [Finding of Fact No. 12]. Based on these circumstances, it is difficult to discern how these facts would "excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer . . . ." *Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App. 2009). Indeed, these circumstances suggest just the contrary: that there was absolutely nothing about which GDHI should be suspicious. As a result, the Court finds that at the time that GDHI and Sharp executed the Dation on January 5, 2012, GDHI acted in good faith, having no reason to "look behind," the transaction or suspect that Sharp's intent was "to defraud the debtor's creditors." *In re Consol. Capital Equities Corp.*, 175 B.R. at 638; *In re Still*, 124 B.R. at 28.

### c.   GDHI Acquired the Real Property Without Knowledge of Its Voidability

Finally, even if a subsequent transferee takes for value *and* in good faith, the transfer can still be avoided if the transferee had "knowledge of the voidability of the transfer avoided." In this sense, "knowledge" means that "the transferee knew facts that would lead a reasonable person to believe that the property [transferred] was recoverable." *Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 413 B.R. 438, 497–98 (Bankr. N.D. Tex. 2009); *In re Consol. Capital Equities Corp.*, 175 B.R. at 638. Courts use a "reasonable person" standard to analyze this element; thus, the party seeking to avoid the transfer need not demonstrate "a complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable." *Bonded*, 838 F.2d at 898. Rather "some lesser knowledge will do." *Id.*; *see In re Consol. Capital Equities Corp.*, 175 B.R. at 638; *In re Heritage Org., L.L.C.*, 413 B.R. at 498. Under

this approach, a transferee does not have an *absolute* duty to investigate, but "[s]ome facts strongly suggest the presence of others." *Bonded*, 838 F.2d at 898 (internal citations omitted).  A transferee that "closes its eyes to the remaining facts may not deny knowledge," or receive the protection of § 550(b)(1).  *Id.*  In the case at bar, GDHI did not know of the voidability of the transfer at the time that it acquired the Real Property.

> ### i.  As of January 5, 2012, GDHI Acquired the Real Property Without Knowledge of Voidability.

As already noted, when Sharp conveyed the Real Property to GDHI on January 5, 2012, GDHI possessed *no* knowledge of the voidability of the transfer of the Real Property from Seiran to Sharp.  Stated differently, GDHI was unaware of any facts that would indicate that Seiran's earlier transfer of the Real Property to Sharp was fraudulent or avoidable.  *See* 11 U.S.C. § 548(a)(1).  Indeed, GDHI's principals had no knowledge of Seiran's bankruptcy or the Texas Suit at the time of the execution of the Dation on January 5, 2012.  [Finding of Fact No. 12].  When GDHI's counsel conducted a title search on the Real Property at the outset of the Louisiana Suit (well before Sharp's execution of the Dation), that search indicated no outstanding encumbrances, liens, or notices of *lis pendens.*  [Finding of Fact No. 9].  Based on this title search, GDHI had no reason to believe that Sharp's acquisition of the Real Property from Seiran was, in any way, illegitimate or for less than "reasonably equivalent value" under § 548(a)(1).  By all indications, Sharp was the bona fide owner of the Real Property (pursuant to the Plaquemines Parish mortgage and conveyance records).  Absent an exhaustive and entirely unprompted search of county-court dockets—across the neighboring state of Texas, no less— GDHI had no way of knowing any facts on January 5, 2012 to suggest that Seiran's transfer of the Real Property to Sharp was potentially avoidable.

In sum, under the circumstances set forth above, this Court concludes that on January 5, 2012, GDHI took the Real Property for value, in good faith and without knowledge of its voidability.

> ii. *This Court's Conclusion that GDHI took the Real Property for Value, in Good Faith and Without Knowledge of its Voidability is Not Disturbed Despite GDHI's Learning of Seiran's Bankruptcy on January 6, 2012.*

The Trustee does not disagree with this Court's finding that GDHI had no knowledge of the voidability of the transfer of the Real Property to Sharp on January 5, 2012. Rather, the Trustee maintains that he notified GDHI of the Debtors' bankruptcy on January 6, 2012,[16] and that GDHI therefore had notice of the voidability of the Real Property's transfer before—and at the time of—two other events: (1) the January 10, 2012 Louisiana Court approval of the consent agreement; and (2) the February 22, 2012 conveyance of the Real Property from GDHI to the Williamses. [Finding of Fact No. 13]. Accordingly, the Trustee contends that GDHI cannot assert a defense under § 550(b)(1).

This conclusion is incorrect. First, the fact that the Louisiana Court approved the consent agreement on January 10, 2012 is irrelevant to the Court's analysis of GDHI's knowledge of voidability. Under Louisiana law, when Sharp executed the Dation on January 5, 2012, GDHI immediately acquired the title to the Real Property. *See, e.g.*, *Hibernia Nat'l Bank v. Continental Marble & Granite Co., Inc., et al.*, 615 So. 2d 1109, 1111 (La. Ct. App. 1993) ("As between the parties to an act effecting the transfer of an immovable, effectiveness of the transaction does not depend upon the act's recordation in the public records. The law clearly provides that *the transaction was complete and effective between the parties the moment it was executed*.")

---

[16] This assertion appears to be based on an email string between the Trustee's counsel and GDHI's counsel. [Adv. Doc. No. 52-1, p. 3, 4). That string, which began on January 9, 2012, references a phone call on Friday (presumably January 6, 2012) between the two counsel. The presumption is that in that phone call, the Trustee's counsel notified GDHI of the bankruptcy.

(emphasis added)); *Ernst v. Bordes*, 297 So. 2d 512, 517 (La. Ct. App. 1974) ("The jurisdiction of this State has consistently and unequivocally held [sic] that the requirement of delivery, as regards [to] an immovable, is satisfied by the execution of the public act . . ."); *Caster v. Miller*, 39 F. Supp. 120, 124 (E.D. La. 1941) ("If the dation en payment of November 14, 1935 be not a simulation, it was a real contract which remained in full legal existence *from its said date of execution* up to and beyond (unto this present date) the 25th day of January, 1937 . . .) (emphasis added); *Id.* at 126 ("Under the act of dation en paiement of November 14, 1935, title to the Miller property therefore vested . . . ") (emphasis added)). **Thus, under applicable Louisiana law, GDHI had no notice of the voidability of the transfer at the time Sharp conveyed the title to the Real Property—i.e., January 5, 2012.**

Further, to the extent that the Trustee is requesting that this Court consider GDHI's knowledge of voidability at a time *other than* the moment of conveyance, such as at the time of the January 10, 2012 Louisiana Court's approval of the consent agreement or the February 22, 2012 sale to the Williamses, the Court declines to do so. When analyzing any statute or rule, the Court *must* begin its analysis with the words themselves. *See Ron Pair v. United States,* 489 U.S. 235, 241 (1989) (finding that "[w]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917) (emphasis added)). Section 550(b)(1) makes no mention of the transferee's knowledge at *any time* after the conveyance. Rather, § 550(b)(1) states: a subsequent transferee must "*take*[] . . . without knowledge of the voidability." Thus, the key moment is *the taking. Cf. In re Consol. Capital Equities Corp.*, 175 B.R. at 639 (considering whether the litigant accepted the transfer of the property without knowledge of voidability).

Moreover, any other interpretation of this provision could call into question the transferee's knowledge at the time of future conveyances, thereby throwing *any* future sale into flux. This Court's reading of § 550(b)(1) therefore draws a firm—if arbitrary—line for both the Court and litigants. For these reasons, the Court concludes that GDHI's knowledge of the voidability of the transfer *after* January 5, 2012 is irrelevant to this Court's § 550(b)(1) analysis. Rather, the test is: what did GDHI know at the moment of conveyance? And at that moment— i.e., January 5, 2012—the Court has already found that GDHI had no knowledge of the voidability of the transfer of the Real Property.

In sum, as of January 5, 2012, GDHI took title to the Real Property in good faith, for value and without knowledge of its voidability. Accordingly, this Court concludes that GDHI has successfully asserted the affirmative defense under § 550(b)(1), and therefore that the Trustee may not recover the value of the Real Property from GDHI.

3. <u>The Trustee Cannot Recover the Pre-Petition Transfer of the Boat Under 11 U.S.C. § 548 Because GDHI Can Successfully Assert a Good Faith Defense Under 11 U.S.C. § 550(b)(1)</u>

Like the Real Property, the Trustee cannot recover the Boat's value from GDHI under 11 U.S.C. § 548,[17] as GDHI has established each of the elements under § 550(b)(1) to assert a defense. The Court finds that GDHI took the Boat from Sharp (1) for value; (2) in good faith; and (3) without knowledge of the voidability of the transfer.

**a. GDHI Took the Boat for Value and In Good Faith**

As with the Real Property, the Court concludes that GDHI took the Boat "for value" having accepted the Boat from Sharp in partial satisfaction of the antecedent debt owed by Sharp

---

[17] The Trustee does not seek to recover the Boat itself, as he has never filed suit against Wynne, the individual to whom GDHI sold the Boat on February 20, 2012. Rather, at this point, the only relief that the Trustee could seek is to recover the value of the Boat from GDHI.

at the time that GDHI initiated the Louisiana Suit. [Finding of Fact No. 12]. GDHI also took the Boat in good faith; as with the Real Property, no facts at the time of the execution of the Dation reasonably suggested to GDHI that the Boat did not belong to Sharp. There was no reason to look beyond the transaction. *In re Consol. Capital Equities Corp.*, 175 B.R. at 638.

### b. GDHI Took the Boat Without Knowledge of Voidability

#### i. As of January 5, 2012, GDHI Acquired the Boat Without Knowledge of Voidability.

The Court also concludes that GDHI acquired the Boat without knowledge that Sharp's transfer was voidable. Stated differently, at the time of the Boat's conveyance, GDHI knew of no facts that would lead a reasonable person to believe that the Boat was recoverable. Again, although in accepting a transfer of property a transferee does not have a "duty to investigate" the transfer, GDHI could not have closed its eyes to facts suggesting that the Boat transfer may be voidable. *Bonded*, 838 F.2d at 898; *In re Consol. Capital Equities Corp.*, 175 B.R. at 639. Yet, at the moment Sharp conveyed the Boat to GDHI on January 5, 2012, GDHI possessed no such facts. GDHI had no knowledge of either Seiran's bankruptcy or of the Final Order [Finding of Fact No. 12], and accordingly, GDHI was unaware of any facts that would trigger a "duty to investigate" whether Seiran's earlier transfer of the Boat to Sharp was fraudulent or avoidable. *Bonded*, 838 F.2d at 898. At the date of conveyance from Sharp to GDHI (i.e., January 5, 2012), Sharp reasonably appeared to be the bona fide owner of the Boat.

#### ii. This Court's Conclusion that GDHI took the Boat for Value, in Good Faith and Without Knowledge of its Voidability is Not Disturbed Despite GDHI's Learning of Seiran's Bankruptcy on January 6, 2012.

The Trustee does not disagree with this Court's finding that GDHI had no knowledge of the voidability of the transfer of the Boat to Sharp on January 5, 2012. Rather, the Trustee maintains that he notified GDHI of the Debtors' bankruptcy on January 6, 2012, and that GDHI

therefore had notice of the voidability of the Boat's transfer before—and at the time of—two other events: (1) the January 10, 2012 Louisiana Court approval of the consent agreement; and (2) the February 20, 2012 conveyance of the Real Property from GDHI to Wynne. [Finding of Fact No. 13].   Accordingly, the Trustee contends that GDHI cannot assert a defense under § 550(b)(1).

This conclusion is incorrect.   Again, the fact that the Louisiana Court approved the consent agreement on January 10, 2012 is irrelevant to this Court's analysis of GDHI's knowledge of the voidability.   Under Louisiana law, when Sharp executed the Dation on January 5, 2012, GDHI immediately acquired the title to the Boat.   Under Louisiana law, title to moveable property, such as the Boat, may only occur upon delivery.  *See, e.g.*, *Hibernia Nat'l Bank*, 615 So. 2d at 1111; *Ernst*, 297 So. 2d at 517; *Caster*, 39 F. Supp. at 124.   Delivery, however, need not occur by physically handing the property from seller to buyer.   Instead, if within a dation the parties implicitly acknowledge that the buyer holds title, delivery is deemed to be accomplished, *even if* the seller continues to physically hold the movable property.  *See* LA. CIV. CODE ANN. art. 2477 (1995) ("Delivery of a movable object takes place by handing it over the buyer.   If the parties so intend delivery may take place in another manner . . . by negotiating to him a document of title to the thing, or even by the mere consent of the parties if the thing cannot be transported at the time of the sale or if the buyer already has the thing at that time."); *Jaubert v. Quilter*, 19 So. 279, 280 (La. 1896) ("It is urged there was no delivery . . . [But] [i]n the dation en paiement, as in the sale, delivery may be perfected by the vendor holding after the sale as the tenant or for the purchaser").

In the suit at bar, the Dation expressly states that "contemporaneously with the execution of the [Dation]" Sharp transferred to GDHI any and all equity in both the Real Property, as well

as any and all equity in any "all movable property" situated at that location—including the Boat. [Adv. Doc. No. 91-3 at 30–32]. Consequently, GDHI took simultaneous title to both the Boat *and* its storage location—i.e., the Real Property. The parties therefore simply implied that delivery could occur at the same time as the execution of the Dation. Any additional physical delivery of the Boat was not necessary, and the Court concludes that Sharp conveyed the Boat to GDHI when it executed the Dation (on January 5, 2012). As a result, GDHI had no notice of the voidability of the transfer until *after* the conveyance of the Boat.

Moreover, in the Final Order, the Texas Court never restrained Sharp from alienating the Boat; in fact, the TRO, the Temporary Injunction, *and* the Final Order never mention the Boat.[18] *Cf. Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Group Holdings, Inc.*, 374 S.W.3d 488, 502 (Tex. App. 2012) (holding that under Tex. R. Civ. P. 683 "[E]very order granting an injunction *must be specific* in its terms and *describe in reasonable detail* the act or acts to be restrained."). Rather, these orders specifically describe the Real Property and other various monetary transactions, but never the Boat. *Id.* The Texas Court never entered any order voiding

---

[18] In response to an interrogatory question stating "Please provide a legal description of the Boat," the Trustee, on Seiran's behalf, described the Boat as follows:

> 2010 24-foot NauticStar, Serial Number JNT17184J910
> Yamaha outboard motor Model F20BTXR, Serial No. 6P2X1027151
> Boat registered to Richard Sharp . . .

[Adv. Doc. No. 48-1, p. 22].

There is nothing even resembling this description in the TRO, the Temporary Injunction or the Final Order. The only possible reference to the Boat relates to an entity known as "Aqua Marine." In the Temporary Injunction and TRO, Sharp is explicitly enjoined from using, transferring or giving away "the proceeds of a handwritten withdrawal slip by [Sharp] allegedly withdrawn from Plaintiff [Seiran]'s Bank of America account for $27,500.00 on August 20, 2010 and used to purchase a Cashier's Check payable to "Aqua Marine." [Adv. Doc. No. 1-6, p. 3–4].

Not only must a TRO and injunction be particularized, *see Reliant Hosp. Partners, LLC*, 374 S.W.3d at 502 —which this description is not—but there was simply no reason to use such ambiguous language to describe the Boat. The Texas Court executed the TRO in August 2011, the Temporary Injunction in September 2011, and the Final Order in December 2011. But, by May of 2011 (i.e., three months before the TRO), Seiran had already purchased the Boat *and* had transferred it to Sharp. *See* [Finding of Fact Nos. 1, 2, 5, 6 & 10]. Seiran, therefore, could have provided the Texas Court with a much more precise description of this asset. By failing to provide a more specific description of the Boat in the TRO, the Final Order, and the Temporary Injunction, the Court concludes that these orders do *not* enjoin Sharp from conveying the Boat.

Seiran's conveyance of the Boat to Sharp, or enjoining Sharp from transferring the Boat to any third party (such as GDHI). Thus, the fact that GDHI received the orders of the Texas Court prior to the Louisiana Court actually signing the consent judgment on January 10, 2012 does not change this Court's analysis of GDHI's actual knowledge of the voidability of Seiran's conveyance of the Boat to Sharp. This Court's conclusion remains the same: GDHI took title to the Boat without knowledge of its voidability.

Accordingly, having established that GDHI took the Boat for value, in good faith, and without knowledge of the transfer's voidability, GDHI has successfully asserted an affirmative defense under § 550(b)(1).

4. <u>The Trustee Cannot Avoid the Post-Petition Transfer of the Real Property or the Boat under 11 U.S.C. § 549 Because Neither the Real Property Nor the Boat Have Ever Been Property of the Debtors' Estate</u>

### a. The Trustee Cannot Avoid the Transfer of the Real Property

Section 549 provides, in pertinent part, that a trustee may avoid a post-petition transfer of *property of the estate*. Yet, as already discussed above, the Final Order had no effect on title and therefore Seiran had no interest whatsoever in the Real Property on the Petition Date. Accordingly, the Trustee cannot avoid the transfer of the Real Property from Sharp to GDHI because the Real Property has never been a part of the Debtors' estate. Section 549 simply does not apply to the Real Property, or its post-petition transfer from Sharp to GDHI.

### b. The Trustee Cannot Avoid the Transfer of the Boat

    i.    *The Trustee Has Waived His Claim to the Boat Because in His Response to GDHI's Motion for Summary Judgment He Did Not Reply to GDHI's Refutation of His Ability to Avoid the Boat's Transfer Under § 549.*

GDHI has argued at least twice—in the First Motion for Summary Judgment, as well as in GDHI's Motion for Summary Judgment[19]—that the Trustee may not avoid the transfer of the Boat under § 549. The Trustee filed a response to both pleadings. [Finding of Fact Nos. 25, 27 & 28]. The Trustee also filed his own motion for summary judgment. [Finding of Fact No. 26]. Yet, none of the Trustee's pleadings address GDHI's claim regarding the Boat and the voidability of its transfer under § 549.

Where a party fails to reply to another party's claim in responding to a summary judgment, the failing party concedes that claim. *See e.g., Westry v. N. Carolina AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004); *Reid v. Albemarle Corp.*, No. CIV.A.-96-7564-A-1, 2002 WL 31526451 (M.D. La. June 28, 2002) (granting summary judgment to defendants after plaintiffs failed to address a claim raised by defendants in their reply to the summary judgment motion); *Toney v. Rosewood Care Ctr., Inc.*, No. 98-C-693, 2001 WL 1105127, at *5 (N.D. Ill. Sept. 20, 2001) (finding that plaintiffs had waived a claim by failing to respond to defendant's refutation of that claim). Here, the Trustee has failed to *ever* rebut GDHI's assertion that the Trustee cannot avoid Sharp's transfer of the Boat to GDHI, including in his response to GDHI's live motion for summary judgment. [Finding of Fact Nos. 25, 26 & 28]. As a result, the Court concludes that Trustee has conceded this claim. *Westry*, 286 F. Supp. 2d at 600.

---

[19] This second motion—GDHI's Motion for Summary Judgment [Adv. Doc. No. 91]—is GDHI's "live" motion before this Court.

      ii.    *Even if the Trustee Has Not Waived His Claim to the Boat, the Trustee Could Not Avoid the Transfer of It by Sharp to GDHI.*

Even if he has not waived his claim, the Trustee cannot avoid the transfer of the Boat from Sharp to GDHI, or recover its value from GDHI.[20]  Section 549 of the Code permits a trustee to avoid a post-petition transfer of property belonging to the debtor's estate.  11 U.S.C. § 549(a).  Yet, as discussed above, at the time Sharp conveyed the Boat to GDHI (i.e., on January 5, 2012), Sharp held title to the Boat.  Further, at the time of that conveyance, GDHI lacked knowledge of any interest that Seiran might have had in the Boat.[21]  Finally, up until the time of GDHI's sale of the Boat to Wynne, GDHI was the legal title holder.

The Trustee offers no evidence to rebut these conclusions.  First, the Final Order does not even mention the Boat; the Texas Court limited its ruling to the Real Property alone.  [Finding of Fact No. 10].  Furthermore, neither the TRO nor the Temporary Injunction mentions the Boat.  [Finding of Fact Nos. 5 & 6].  Instead, in both documents, the Texas Court described with great particularity the assets (or the proceeds of said assets) it was restraining Sharp from conveying.  However, none of those specific descriptions included the Boat.[22]  [Finding of Fact Nos. 5 & 6].  Thus, as Sharp's post-petition transfer of the Boat to GDHI was a transfer of personal property belonging to Sharp—*not* Seiran—the Trustee cannot now use § 549 to avoid this transfer.  The Boat has simply never been property of the Debtors' estate.

     5.   <u>The Trustee May Not Impose a Constructive Trust</u>

The Trustee cannot obtain a constructive trust over the Real Property or the Boat, either under Texas or Louisiana law.

---

[20] *See* footnote 17.

[21] It was not until at least January 6, 2012 that the Trustee gave GDHI any notice of Seiran's bankruptcy, or that Seiran, and the Trustee on Seiran's behalf, may have an interest in the Boat.  [Finding of Fact No. 13].

[22] *See* footnote 18.

### a. Louisiana Law Does Not Recognize Constructive Trusts

Generally, "the law of the place where the realty is located controls," *Schewe v. Bentsen*, 424 F.2d 60, 62 (5th Cir. 1970). As both the Boat and the Real Property are located in Louisiana, the Court must therefore consider whether a constructive trust could be imposed under Louisiana law. The concept of a "constructive trust" is not recognized under Louisiana law because it is anathema to civil law notions of ownership and is a precept unsupported by the Louisiana Civil Code. *See In re Latham Exploration Co., Inc.*, 83 B.R. 423, 426 (W.D. La. 1988) ("[I]t is clear the Louisiana Civil Code prohibits the imposition of a constructive trust on property.") (citing *Schwegmann v. Schwegmann*, 441 So.2d 316, 322–23 (La. App. 5th Cir. 1983)). Further, both the Fifth Circuit and federal courts within the Fifth Circuit have repeatedly observed that Louisiana law has rejected the constructive trust theory. *See e.g., In re Oxford Mgmt., Inc.*, 4. F.3d 1329, 1336 (5th Cir. 1993) (determining that because Louisiana law does not recognize constructive trusts, funds that were held by the debtor for commissioned agents were property of debtor's estate absent formal creation of a trust) (citing *In re Emerald Oil Co.*, 807 F.2d 1234, 1238 (5th Cir. 1987)); *Marple v. Kurzweg*, 902 F.2d 397, 399 (5th Cir. 1990) ("Indeed, the 'constructive trust' is not recognized in Louisiana.") (citing *Mansfield Hardwood Co. v. Johnson*, 268 F.2d 317 (5th Cir. 1959)). In sum, given that the doctrine of constructive trust is not recognized in Louisiana, the Trustee cannot premise a claim for relief in regard to both the Real Property and the Boat on that doctrine.

### b. Texas Law Will Not Impose a Constructive Trust to a Subsequent Conveyance in these Circumstances

The Trustee's constructive argument also fails under Texas law. Under Texas law, the Trustee bears the burden of establishing that the remedy of imposition of a constructive trust on the Real Property and the Boat is appropriate. *The Cadle Co. v. Moore (In re Moore)*, 608 F.3d

253, 263 (5th Cir. 2010). In addition, a constructive trust is not actually a cause of action under Texas law, but a remedy to prevent unjust enrichment; it may therefore only be granted upon a showing of actual fraud, or breach of a confidential or fiduciary relationship. *Id.* (citing *Haber Oil*, 12 F.3d at 436–37); *see also Thigpen v. Locke*, 363 S.W.2d 247, 250 (Tex. 1962) ("[E]quity will impose a constructive trust to prevent one who obtains property by fraudulent means from being unjustly enriched").

Here, the Trustee has not alleged fraud or unjust enrichment by GDHI. Rather, it is clear that GDHI received the Real Property and the Boat in good faith, and for value through the Dation. Indeed, GDHI was unaware of either the pending Texas Suit or the pending bankruptcy when Sharp and GDHI executed the Dation on January 5, 2012. [Finding of Fact No. 12]. Therefore, under Texas law, a constructive trust cannot be imposed.

Moreover, even if such a constructive trust could be imposed, its application is limited. Here, such a trust is permissible only in regard to the first transfer: from Seiran to Sharp. The recipient of the subsequent transfer (i.e., GDHI) would be subject to such a trust *only if* "(1) the recipient (i.e., GDHI) [did] not give consideration for the property or (2) the recipient (i.e., GDHI) [had] notice of the existence of the trust at the time of the transfer." *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453 (Tex. App. 2008).

Here, neither condition applies to GDHI, and therefore any potentially valid constructive trust against Sharp could not have survived the subsequent conveyance to GDHI. First, in accepting the Real Property and the Boat from Sharp in partial repayment for an antecedent debt, GDHI gave consideration. [Finding of Fact No. 12]. Second, GDHI had no notice of any trust at the time Sharp executed the Dation. Accordingly, the Trustee's request for imposition of a constructive trust fails under Texas law.

6. The Real Property Was Not Subject to the Automatic Stay, and Therefore, GDHI
   Did Not Violate the Stay by Transferring the Real Property to the Williamses

Lastly, the Trustee seeks to hold GDHI liable for a willful violation of the automatic stay

due to GDHI's post-petition transfer of the Real Property to the Williamses.[23]   The Trustee's

argument is premised on the faulty idea that the Real Property became part of the Debtors' estate

on the Petition Date. But, as earlier discussed, because the Final Order, as a matter of law, never

re-conveyed to Seiran any interest in the Real Property, the Real Property was not property of the

estate on the Petition Date. Rather, as of the Petition Date, the Real Property belonged to Sharp

and continued to belong to him until the time he conveyed this asset to GDHI (on January 5,

2012). As a result, the subsequent transfer of the Real Property from GDHI to the Williamses

did not implicate property of the Debtors' bankruptcy estate. Consequently, GDHI did not

violate the automatic stay when it conveyed the Real Property to the Williamses.

IV.   CONCLUSION

Each of the Trustee's five claims is without merit. The first claim is without merit

because instead of *indirectly* affecting title to the Real Property, the Final Order tried to illegally

*directly* affect the title. As a result, the Debtors—and therefore the Trustee—have neither legal

nor equitable title to the Real Property. The second claim fails because the Trustee cannot

recover from a subsequent transferee (i.e., GDHI) who took the disputed assets (i.e., the Real

Property and the Boat) for value, in good faith, and without knowledge of the voidability of the

previous transfer. The third claim fails because the statute invoked applies only to a transfer of

---

[23] Although the Trustee has not argued that GDHI's sale of the Boat to Wynne was a willful violation of the
automatic stay, if he had made that argument, the result would be the same as his argument in regards to the Real
Property: GDHI's transfer to Wynne was not a willful violation of the automatic stay because the Boat, like the Real
Property, has never belonged to Seiran's estate. [Adv. Doc. No. 52, p. 7] (arguing that GDHI's conveyance of
the property (i.e., the Real Property) to Williams was a willful violation of the automatic stay); *see also* [Adv. Doc.
No. 80, p. 2, 9] (after having defined the Real Property as "the Property," the Trustee argues that "[o]n the Petition
Date, *the Property* was property of the estate," and that "the post-petition transfer [from Sharp to GDHI] violated the
automatic stay under § 362") (emphasis added).

property of the estate, and the identified transfer did not include any such property.  The fourth claim is without merit because:  (1) Louisiana law does not recognize a constructive trust; and (2) Texas law imposes a constructive trust only where there is fraud or unjust enrichment, and there is nothing in the record to show that GDHI either has committed fraud or has been unjustly enriched.  The final claim fails because the automatic stay cannot be violated when no property of the estate is implicated in the post-petition transfer.

For all these reasons, this Court concludes that the Trustee's Motion for Partial Summary Judgment should be denied in its entirety.  Further, the Court concludes that GDHI's Motion for Summary Judgment should be granted in its entirety.

An Order consistent with these findings and conclusions will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on this 8th day of March, 2013.

Jeff Bohm
Chief United States Bankruptcy Judge